# IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE FOURTH CIRCUIT

---

CAMILLE SEDAR,

*Plaintiff - Appellant,*

v.

RESTON TOWN CENTER PROPERTY, LLC;
BOSTON PROPERTIES LIMITED PARTNERSHIP,

*Defendants - Appellees,*

and

BOSTON PROPERTIES, INC.; BEACON CAPITAL PARTNERS LLC,

*Defendant.*

v.

CDA INCORPORATED, d/b/a MaxSent,

*Third Party Defendant*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA

---

## BRIEF OF APPELLEES

---

David D. Hudgins
HUDGINS LAW FIRM, P.C.
Suite 100
2331 Mill Road
Alexandria, VA 22314
703-739-3300

*Counsel for Appellees*

Joseph P. Moriarty
WILLCOX & SAVAGE, PC
Wells Fargo Center
Suite 2200
440 Monticello Avenue
Norfolk, VA 23510
757-628-5500

*Counsel for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 19-1972          Caption: 1:18-cv-01111-CMH-TCB

Pursuant to FRAP 26.1 and Local Rule 26.1,

RESTON TOWN CENTER PROPERTY, LLC
(name of party/amicus)

_____

who is _____ appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?                             ☑ YES ☐ NO
     If yes, identify all parent corporations, including all generations of parent corporations:
     Boston Properties, Inc.

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
     other publicly held entity?                                                 ☑ YES ☐ NO
     If yes, identify all such owners:
     Boston Properties, Inc.

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐YES ☑NO If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ David D. Hudgins            Date:    9/12/2019

Counsel for: Reston Town Center Property, LLC

## CERTIFICATE OF SERVICE
***************************

I certify that on    9/12/2019    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Andrew R. Park
David J. Sensenig
Park Sensenig LLC
310 W. Main St.
Richmond, VA 23220

/s/ David D. Hudgins                    9/12/2019
        (signature)                            (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 19-1972        Caption: 1:18-cv-01111-CMH-TCB

Pursuant to FRAP 26.1 and Local Rule 26.1,

BOSTON PROPERTIES LIMITED PARTNERSHIP
(name of party/amicus)

_____

who is _____ appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                ☑ YES ☐ NO
      If yes, identify all parent corporations, including all generations of parent corporations:
      Boston Properties, Inc.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                         ☑ YES ☐ NO
      If yes, identify all such owners:
      Boston Properties, Inc.

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                         ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ David D. Hudgins                      Date:        9/12/2019

Counsel for: Boston Properties LP

## CERTIFICATE OF SERVICE
***************************

I certify that on _____ 9/12/2019 _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Andrew R. Park
David J. Sensenig
Park Sensenig LLC
2310 W. Main St.
Richmond, VA 23220

/s/ David D. Hudgins                                    9/12/2019
      (signature)                                         (date)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

STATEMENT OF THE ISSUES ................................................................................ 1

STATEMENT OF THE CASE ................................................................................... 1

    I.     The Parties ................................................................................................ 1

    II.    The Accident ............................................................................................ 2

    III.   Post-Accident Investigation ..................................................................... 3

    IV.   Facts Relevant to Issues Presented ......................................................... 4

         A.  No Evidence of Proximate Cause ..................................................... 4

         B.  No Evidence of Any Hazard or Notice to BPLP or RTC ................. 8

    V.    Procedural History ................................................................................... 9

SUMMARY OF THE ARGUMENT .................................................................... 10

ARGUMENT ........................................................................................................ 12

    I.     Standard of Review ................................................................................ 12

    II.    Sedar Has No Evidence to Support Her Claims of Negligence and
         Negligence *Per Se* ................................................................................ 14

         A.  No Evidence of a Dangerous Condition ........................................ 15

         B.  No Evidence of Actual or Constructive Notice to BPLP or RTC ..17

         C.  No Evidence of Proximate Cause ................................................... 21

         D.  Sedar's Expert Cannot Provide Evidence of Proximate Cause ...... 30

    E.   Sedar Ignored Other Equally Possible Reasons for Her Fall ..........32

CONCLUSION ........................................................................................33

CERTIFICATE OF COMPLIANCE........................................................34

CERTIFICATE OF SERVICE .................................................................34

# TABLE OF AUTHORITIES

## Cases

Allen Realty Corp. v. Holbert,
    227 Va. 441, 318 S.E.2d 592 (1984) ................................................................ 20

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) ........................................................................................ 13

Anderson v. U.S.,
    E.D. Va. No. 4:12CV176, 2013 WL 12125741 (E.D. Va. July 29, 2013) ....... 19

Ash v. United Parcel Serv., Inc.,
    800 F.2d 409 (4th Cir. 1986) ........................................................................... 13

Atrium Unit Owners Ass'n v. King,
    266 Va. 288, 585 S.E.2d 545 (2003) ......................................................... 27, 28

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ................................................................................... 12, 14

Cherry v. Palace on Plume St.,
    90 Va. Cir. 103, No.: CL14-6642, 2015 WL 10376064
    (Va. Cir. Ct., Mar. 17, 2015) ........................................................................... 21

City of Newport News v. Anderson,
    216 Va. 791, 223 S.E.2d 869 (1976) ................................................................ 16

City of Richmond v. Schonberger,
    111 Va. 168, 68 S.E. 284 (1910) ................................................................ 16, 17

City of Roanoke v. Sutherland,
    159 Va. 749, 167 S.E. 243 (1933) .................................................................... 16

Childress v. City of Richmond,
    181 Va. 267, 24 S.E.2d 419 (1943) .................................................................. 16

Clark v. United States,
    402 F.2d 950 (4th Cir. 1968) ...................................................................... 23, 32

Colonial Stores, Inc. v. Pulley,
    203 Va. 535, 125 S.E.2d 188 (1962) ................................................................ 18

Daubert v. Merrell Dow Pharms., Inc.,
    509 U.S. 579 (1993) ........................................................................... 31

Davoudlarian v. Krombein,
    244 Va. 88, 418 S.E.2d 868 (1992) .................................................. 21

Drewitt v. Pratt,
    999 F.2d 774 (4th Cir. 1993) ............................................................ 14

Farren v. Gilbert,
    224 Va. 407, 297 S.E.2d 668 (1982) ................................................ 24

Felty v. Graves-Humphreys Co.,
    818 F.2d 1126 (4th Cir. 1987) ..................................................... 13-14

First Sentinel Bank v. United States,
    364 F. Supp. 3d 615 (W.D. Va. 2019) ............................................. 14

Fox v. Custis,
    236 Va. 69, 372 S.E.2d 373 (1988) .................................................. 14

French v. Successors of Loyal Co.,
    32 Va. (5 Leigh) 627 (1834) ............................................................. 21

Fultz v. Delhaize Am., Inc.,
    278 Va. 84, 677 S.E.2d 272 (2009) .................................................. 15

Great Atl. & Pac. Tea Co. v. Berry,
    203 Va. 913, 128 S.E.2d 311 (1962) ................................................ 19

Grim v. Rahe, Inc.,
    246 Va. 239, 434 S.E.2d 888 (1993) ......................................... 17, 18

Halterman v. Radisson Hotel Corp.,
    259 Va. 171, 523 S.E.2d 823 (2000) ................................................ 15

Hodge v. Wal-Mart Stores, Inc.,
    360 F.3d 446 (4th Cir. 2004) ............................................. 15, 18, 22

Hoffner v. Kreh,
    227 Va. 48, 313 S.E.2d 656 (1984) .................................................. 21

Hudson v. Boddie-Noell Enterprises, Inc.,
    No. 7:11CV00466, 2012 WL 2153375 (W.D. Va. June 13, 2012) ................... 25

Jefferson v. Kroger Ltd. P'ship I,
    E.D. Va. No. 3:14CV156 DJN, 2014 WL 5594921 (E.D. Va. Nov. 3, 2014) .. 18

Jones v. Wash. Metro. Area Transit Auth.,
    378 F. Supp. 2d 718 (E.D. Va. 2005) ................................................................ 16

Kendrick v. Vaz, Inc.,
    244 Va. 380, 421 S.E.2d 447 (1992) ................................................................. 24

Kocen v. Piccadilly Restaurants, L.L.C.,
    No. 3:10CV921-HEH, 2011 WL 3820777 (E.D. Va. Aug. 26, 2011) .............. 23

Kumho Tire Co. v. Carmichael,
    526 U.S. 137 (1999) ......................................................................................... 31

Lewis v. City of Va. Beach Sheriff's Office,
    409 F. Supp. 2d 696 (E.D. Va. 2006) ............................................................... 13

Marchant v. Boddie-Noell Enterprises, Inc.,
    344 F. Supp. 2d 495 (W.D. Va. 2004) .................................................. 14, 22, 32

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) ...................................................................................... 12-13

McCauley v. Purdue Pharm. L.P.,
    331 F. Supp. 2d 449 (W.D. Va. 2004) .............................................................. 22

McGuire v. Hodges,
    273 Va. 199, 639 S.E.2d 284 (2007) ...................................................... 26, 27, 28

Med. Center Hosp. v. Sharpless,
    229 Va. 496, 331 S.E.2d 405 (1985) ................................................................. 16

Morrison-Knudsen Co. v. Wingate,
    254 Va. 169, 492 S.E.2d 122 (1997) ................................................................. 24

Oglesby v. GMC,
    190 F.3d 244 (4th Cir. 1999) ............................................................................ 31

Parham v. Albert,
    244 Va. 73, 418 S.E.2d 866 (1992) ................................................................... 24

Richardson v. Lovvorn,
    199 Va. 688, 101 S.E.2d 511 (1958) ................................................................. 32

Roll 'R' Way Rinks, Inc. v. Smith,
  218 Va. 321, 237 S.E.2d 157 (1977) ................................................................ 17

Scott v. Harris,
  550 U.S. 372 (2007) ........................................................................................ 13

Southern States Coop., Inc. v. Doggett,
  292 S.E.2d 331 (Va. 1982) ............................................................................. 32

Stokes v. Geismar,
  815 F. Supp. 904 (E.D. Va. 1993) .................................................................. 32

Thomas v. Omni Hotels Mgmt. Corp.,
  742 F. App'x 729, No. 17-1424, 2018 WL 3689248 (4th Cir. Aug. 2, 2018) .. 19

Town of West Point v. Evans,
  224 Va. 625, 299 S.E.2d 349 (1983) .......................................................... 20, 22

Tyger Constr. Co. v. Pensacola Constr. Co.,
  29 F.3d 137 (4th Cir. 1994) ............................................................................ 31

United States v. Crisp,
  324 F.3d 261 (4th Cir. 2003) .......................................................................... 31

Warren v. Tri Tech Labs., Inc.,
  993 F. Supp. 2d 609 (W.D. Va.),
  aff'd, 580 F. App'x 182 (4th Cir.2014) ........................................................... 13

Waters v. Holloman,
  216 Va. 726, 222 S.E.2d 549 (1976) ............................................................... 24

Weddle v. Draper,
  204 Va. 319, 130 S.E.2d 462 (1963) ............................................................... 21

Wilkins v. Montgomery,
  751 F.3d 214 (4th Cir. 2014) .......................................................................... 12

Winn-Dixie Stores, Inc. v. Parker,
  240 Va. 180, 396 S.E.2d 649 (1990) ............................................................... 18

Wooldridge v. Echelon Serv. Co.,
  243 Va. 548, 416 S.E.2d 441 (1992) .......................................................... 28, 29

**Rules**

Fed. R. Civ. P. 56 ................................................................................... 12

Fed. R. Evid. 702 ................................................................................... 31

## STATEMENT OF THE ISSUES

The Statement of the Issues is more accurately restated as follows:

1.      Even viewed in the light most favorable to Sedar, can her claim based entirely on speculation as to the cause of her fall create a genuine issue for the jury on her claims of negligence and negligence *per se*?

2.      Whether the District Court correctly granted summary judgment based on Sedar's failure to produce evidence that BPLP and RTC had either actual or constructive notice of the alleged defects in the brick?

3.      Whether the District Court correctly granted summary judgment based on Virginia law that does not impose liability under the ordinary duty of care to remedy sidewalk irregularities that are under an inch or two?

4.      Whether the District Court correctly granted summary judgment where there was no testimony or other evidence that shows Sedar actually tripped over the alleged defect in the brick and there were other probable theories as to the cause of the fall?

## STATEMENT OF THE CASE

### I.      The Parties

Reston Town Center Property, LLC ("RTC") owned the property in question, which is a mixed-use development consisting of offices, retail stores, restaurants, and several public parking garages and lots. It was aesthetically designed with open areas and wide sidewalks, including a fountain, a Pavilion and

a cinema (JA 13). The property was managed by Boston Properties Limited Partnership ("BPLP") (Id.). BPLP contracted with CDA Incorporated, d/b/a MaxSent ("MaxSent") to perform security services at the property, which included notifying it of unsafe conditions, hazards, or other safety violations that may be discovered (JA 32, 47-48, 72).

## II.     The Accident

Sedar arrived at RTC on November 15, 2016 to have lunch with co-workers at the restaurant Ted's Bulletin, and she parked in one of the public parking garages known as the "Green Garage" (JA 9, 192-194, 212-213, 255). The lunch was planned in honor of Major Alan Marks, who was being deployed overseas (Id., 255-256). Sedar had driven two of her co-workers, Davida Buchanan and Robert Rapanut in her car. Three other co-workers followed in another car, arriving somewhat later (JA 196, 198-200, 213, 256-257).

After parking her car, Sedar exited the Green Garage through the pedestrian exit at the building's Southwest corner (JA 9, 194-195, 215). The weather was mild, dry, and the sun was bright (JA 195, 214). In one hand, Sedar carried a large poster-sized photo of Major Marks; in her other hand, she held her wallet (JA 244-246, 264, 268). Sedar was wearing flat rubber-soled shoes (JA 246). As she walked out of the garage into the bright sunlight, she proceeded across a landing outside the exit of the Green Garage that had brick pavers heading to a set of four concrete

stairs (JA 217-219). There were four sets of handrails positioned on the concrete stairs (JA 218, 262). Sedar was walking ahead of Buchanan and Rapanut, who were walking together and having a conversation (JA 217, 220-222, 261, 263, 268).

For some unknown reason, Sedar fell down the stairs and landed on the sidewalk at the bottom of the stairs (JA 3, 72, 200-201, 222-223). She might have been distracted by the large photo she was carrying. She might have stumbled due to the rubber-soled shoes she was wearing. She might have missed a step on the staircase. She might have been disoriented walking from the dark garage into the sunlight. Sedar has no memory of her fall whatsoever, and no one witnessed how she fell (JA   200-201, 223, 228, 231, 279).

After her fall, Sedar's coworkers came to her aid and a bystander called for emergency help (JA 226-227). Security guards also came to the scene (JA 374, 376-378). Sedar was taken to Reston Hospital Center, and Buchanan rode with her in the ambulance (JA 236). The other coworkers went to the restaurant for the planned lunch (JA 270).

## III.    Post-Accident Investigation

At some point, Sedar's coworkers went back to the area outside the Green Garage and looked around for a possible reason for her fall (JA 229, 233-235, 238-239, 242, 279-280, 311-312, 349-354). Rapanut found a brick on the landing that

could be jostled with his foot, but was loose in place and not sticking up (JA 280-281). Damien Kerr, another coworker, took photos of the area and a video of Major Marks moving a different brick with his foot (JA 279-280, 351-352). Buchanan noticed that a brick wobbled, but it remained within the space and did not tilt upward (JA 235).

Anthony Swartz, a former employee of MaxSent, was alerted to the incident by another MaxSent security guard and responded to the scene (JA 374, 376-377). When he arrived, he found Sedar on the ground and confirmed that EMS had been called (JA 377-378). Swartz testified that he would have inspected the area of the landing and stairs "with a fine-tooth comb," but he did not discover any problem with the surfaces that may have been a trip hazard (JA 395). Swartz prepared an Incident Report regarding Sedar's fall (JA 179). The Incident Report made no mention of any hazard at the scene.

IV.    **Facts Relevant to Issues Presented**

A. **No Evidence of Proximate Cause**

The cause of Sedar's fall is completely unknown. Sedar herself has no recollection at all of why she fell (JA 200-203). Neither of the two coworkers who were walking behind her at the time saw what caused Sedar to fall. The first time Buchanan noticed that Sedar had fallen was when she hit the ground (JA 223). She

did not see any part of Sedar's falling before she hit the ground (Id.). Buchanan

testified as follows:

> Q.: Did you see the start of her fall? What was the first thing that drew your attention to    her having started to fall or being involved in a fall?
>
> A.: What drew my attention was - - I didn't actually see the beginning of the fall. I saw the fall - - meaning she had already landed in the area in which she was departing from/leaving from, that stairs that was pretty much the area that she was walking from.
>
> Q.: So was she on the ground when you first noticed something was wrong? Or was she almost on the ground? What was the exact position of her body when you noticed that something was wrong?
>
> A.: When I notice something was drastically wrong is the actual instance when she actually hit the ground.

(Id.).

> Q.: Now, you didn't see her step on those bricks?
>
> A.: I didn't see her step on the bricks. No, sir.

(JA 228).

> Q.: But you didn't see the fall?
>
> A.: I didn't see the direct fall.

(JA 231).

   Likewise, Rapanut stated, "I didn't see where she stepped so I can't say

what she stepped on or what's in front of her." (JA 279). Rapanut observed that

Sedar was on the stairs before him and that her head was in his field of vision, then

it disappeared, but he did not know why she fell (JA 264, 277-279). He left no

doubt as to his observations when he testified "I did not see what caused her to

fall." (JA 297). Sedar has no memory of the incident whatsoever:

> Q.: So, can you describe for me - - and I just need to get as much detail as
> you can remember. And I don't want you to guess about anything, but I
> want you to tell me exactly step-by-step what happened from the time
> you exited your vehicle to the time of your fall?
>
> A.: I remember exiting my vehicle and walking towards the stairwell in the
> garage. And I don't have any memory after that.
>
> Q.: So you don't remember the fall?
>
> A.: No.

(JA 200-201). The other three coworkers, Major Marks, Kerr and Karen Dibella,

exited the Green Garage from a different pedestrian exit, and arrived after Sedar

fell (JA 307-309, 346, 354, 359).

Sedar relies heavily on the video that Kerr took of a brick that moved when

pushed, but there is no evidence that the brick in the video played any role in the

cause of her fall (JA 1047). There is conflicting evidence on which path Sedar

walked to the stairs, and to which set of stairs she was headed, so it cannot be

determined whether Sedar ever walked across any loose brick. Buchanan identified

the middle section of the stairway as Sedar's path of travel, but Rapanut testified it

was the section to the left of the middle (JA 292-293). While Rapanut testified that

he also located a brick that moved on the landing, it was not the same brick from

the video (JA 290-291). Essentially, there is zero evidence linking Sedar's fall to

any brick or other condition of the landing and stairs. There were handrails available to Sedar as she descended down the stairs, but there is no evidence that she reached for a handrail (JA 294). However, there is ample evidence of a number of other possibilities that might have caused Sedar to fall.

With no eye witnesses to the fall itself, Sedar proposed to use her expert Dano Holland in an attempt to causally tie her fall to tripping on a brick. Holland's testimony is based on pure speculation and cannot be considered as evidence (JA 431-434). In his report under "Observations" Holland stated, "[a]s Ms. Sedar reached the end of the brick pavers on the landing adjacent to the top of the stairs, she stepped on a loose and unstable brick paver, lost her balance and fell down the flight of stairs injuring herself" and "[h]er companions were following her and witnessed her fall" (JA 431). Actually, none of Sedar's companions saw her step on a brick paver or lose her balance, so Holland's "observations" are entirely without foundation.

Holland later attempted to bolster his opinions by issuing a "rebuttal" report opining that a scuff mark on Sedar's shoes indicated that she hit an obstacle which "may have been the edge of the concrete landing strip on the far side of the 1 ½ " open joint" (JA 469). This opinion is also based on speculation and is completely unreliable. There is no evidence linking the scuff marks on her well-worn shoes to a trip at that time and place. Her shoes could have had scuff marks on them already

or gotten scuffed during her fall. Holland's opinions all stem from a faulty predicate, and are not probative evidence. BPLP and RTC moved to exclude Holland as an expert for these reasons and those further set forth in the Motion to Exclude Expert filed by BPLP and RTC (JA 6, Dkt. 48, 49). Sedar cannot rely on her expert for "evidence" of the proximate cause of her fall.

## B. No Evidence of Any Hazard or Notice to BPLP or RTC

BPLP and RTC have no records of receiving notice of any hazard or dangerous condition at the landing outside the Green Garage, and there is no record of any previous falls at that location. Michael Blanchette, the supervisor who oversaw the security department for MaxSent at RTC, testified that he knew of no safety hazards in the vicinity of the Green Garage where Sedar fell, and there were no records of any defect or hazard in the brick surface reported prior to her fall (JA 153-154, 158, 165-166, 172-175, 411-412). Swartz, the MaxSent security guard who came to the scene, also confirmed that he knew of no incidents of trips over loose bricks in that area prior to Sedar's fall and that he did not observe any safety hazards upon inspection immediately after her fall (JA 383, 385-387, 398-399).

Even if the bricks had loosened, the alleged defects described by Sedar's coworkers do not describe a hazard. They describe one or two bricks that were slightly loose but were still flat with the surface (JA 235, 280-281). Moreover,

Sedar has no knowledge as to how long those conditions may have existed at the site prior to her fall (JA 206).

There were no surveillance cameras covering the area where Sedar fell at the time, so the accident was not captured on any surveillance camera (JA 159, 166-171).

## V.    Procedural History

On August 8, 2018, Sedar filed a Complaint against BPLP and RTC in the Circuit Court for Fairfax County (JA 8-12). In Count I, Sedar alleged that BPLP and RTC were negligent in maintaining "the exit discharge from the Green Garage including the brick sidewalk and landing, and concrete steps, and caused Ms. Sedar to trip and fall down said steps" (JA 10-11). Sedar also alleged negligence per se in Count II for the alleged failure to maintain the property in accordance with applicable statutes and codes enacted for public safety (JA 11). Sedar sought damages of $7,500,000.00, jointly and severally, plus costs, pre-judgment and post-judgment interest (JA 12).

The case was removed to the U.S. District Court for the Eastern District of Virginia on August 30, 2018 (JA 3). After extensive discovery, BPLP and RTC filed a Motion for Summary Judgment on July 12, 2019 (JA 75-95).  At the same time, BPLP and RTC filed a Motion to Exclude Sedar's Expert Dano Holland (JA 6, Dkt 48,49).

On August 22, 2019, the District Court entered Summary Judgment in favor of BPLP and RTC in a carefully reasoned opinion (JA 1038-1043). Addressing the evidence in the light most favorable to Sedar, the District Court found that Sedar's claims fail because she produced no evidence that BPLP or RTC had notice of defects in the bricks and caulking; that no liability is imposed for sidewalk irregularities under an inch or two; and that Sedar has produced "no more than mere speculation that they were the cause of her accident" (JA 1042-1043). In view of this ruling, the District Court did not reach the Motion to Exclude Expert Testimony.

## SUMMARY OF THE ARGUMENT

The District Court properly entered Summary Judgment in favor of BPLP and RTC since Sedar failed to establish any genuine issue of material fact regarding the cause of her fall. Moreover, the record is devoid of any evidence that a dangerous condition existed or that BPLP or RTC was on actual or constructive notice of any such condition.

The cause of Sedar's fall remains undetermined, as she has no memory of it and the two witnesses did not see what made her fall. The after-the-fact musings of Sedar's coworkers that she must have tripped on a brick or lost her balance due to gaps between bricks due to sagging caulk are entirely speculative and insufficient to create a jury issue.

The photos and the video do not show a hazard. While one or two of the bricks could be moved by stepping on them, they were flat with the surface and did not jut up or out to cause a trip hazard. Even the lip on the concrete steps did not extend over an inch to create a hazard. The security company's inspection of the area right after the accident found no significant defects. Further, BPLP and RTC met their duty of ordinary care and have no liability for any sidewalk irregularities that are under an inch or two.

The evidence made clear that even if the loose bricks could somehow be found to be a hazard, no notice was given to BPLP or RTC. It was the practice of these companies to take action to remediate any hazard when notified. This included replacing any loose bricks or the caulk around them. In this instance, there is no evidence that BPLP, RTC or MaxSent had either actual or constructive notice of defects in the bricks or caulking in the landing above the stairs where Sedar fell.

Sedar cannot link the cause of her fall to the bricks, the caulk, the walkway, or any other condition by using expert testimony, especially where the expert's opinion is based entirely on speculation. The proposed expert, Dano Holland, admits that there is no evidence of Sedar coming into contact with a brick, and that there are other possibilities for her fall. Holland's reliance on a scuff mark on her right shoe from a photograph as support for his theory of causation is

also misplaced, especially where he acknowledged that that there were other possible ways Sedar's shoe could have been scuffed. Holland's opinions are unreliable and thus not probative on any purported issue of fact.

Moreover, where there are other equally possible causes of her fall, Sedar cannot recover. As the District Court correctly held, there is no testimony or other evidence that shows Sedar actually tripped over the alleged defect in the brick and there are other probable theories as to the cause of her fall. Thus, as the District Court ruled, "the cause is left in the realm of speculation and should not be sent to a jury" (JA 1043).

## ARGUMENT

### I.    Standard of Review

This Court will review the District Court's grant of summary judgment *de novo*, applying the same standard as the lower court. <u>Wilkins v. Montgomery</u>, 751 F.3d 214, 220 (4th Cir. 2014). Summary judgment is appropriate when a party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing the absence of a material fact, and the opposing party has the burden of showing that a genuine dispute exists <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986); <u>Matsushita Elec. Indus. Co. v.</u>

<u>Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

The party opposing summary judgment may not rest upon mere allegations or denials. Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). To defeat a summary judgment motion, "the non-moving party must rely on more than conclusory allegations, 'mere speculation,' the 'building of one inference upon another,' the 'mere existence of a scintilla of evidence,' or the appearance of some 'metaphysical doubt' concerning a material fact." <u>Lewis v. City of Va. Beach Sheriff's Office</u>, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006)(citations omitted). Unsupported speculation is not enough to withstand a motion for summary judgment. *See* <u>Ash v. United Parcel Serv., Inc.</u>, 800 F.2d 409, 411-12 (4th Cir. 1986). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).

While the District Court is accorded discretion in determining whether to grant summary judgment, it has an "affirmative obligation…to prevent 'factually unsupported claims [or] defenses' from proceeding to trial." <u>Warren v. Tri Tech Labs, Inc</u>. 993 F.Supp.2d 609, 613 (W.D. Va. 2014), aff'd, 580 F. App'x 182 (4th Cir. 2014), *citing* <u>Felty v. Graves-Humphreys Co</u>., 818 F.2d 1126, 1128 (4th Cir.

1987), *quoting* <u>Celotex Corp</u>., 477 U.S. at 323-25; *see also* <u>Drewitt v. Pratt</u>, 999 F.2d 774, 778-79 (4th Cir. 1993). Summary judgment is not a "disfavored procedural shortcut," rather is it an important mechanism for disposing of claims that have no factual basis. <u>First Sentinel Bank v. United States</u>, 364 F. Supp. 3d 615, 617 (W.D. Va. 2019)(*citing* <u>Celotex</u>, 477 U.S. at 327).

The District Court correctly applied the summary judgment standard in granting BPLP and RTC's Motion for Summary Judgment and dismissing Sedar's claims.

## II.    Sedar Has No Evidence to Support Her Claims of Negligence and Negligence *Per Se*.

Sedar offers only wholly speculative evidence of the cause of her fall. Such evidence cannot create a genuine issue for the jury, so that her claims for negligence and negligence *per se* fail as a matter of law. Under Virginia law, in a negligence action a plaintiff must show (1) a legal duty; (2) a breach of that duty; and (3) causation resulting in damage. <u>Marchant v. Boddie-Noell Enterprises, Inc</u>., 344 F. Supp. 2d 495, 497-99 (W.D. Va. 2004), *citing* <u>Fox v. Custis</u>, 236 Va. 69, 372 S.E.2d 373, 375 (1988). To prove a claim of negligence *per se*, plaintiff must establish (1) that the defendant violated a statute that was enacted for public safety; (2) that she belongs to the class of persons for whose benefit the statute was enacted and that the harm that occurred was of the type against which the statute

was designed to protect; and (3) that the statutory violation was a proximate cause of her injury. <u>Halterman v. Radisson Hotel Corp.</u>, 259 Va. 171, 176–77, 523 S.E.2d 823, 825 (2000)(citations omitted). Sedar's evidence has failed to meet the necessary elements of these claims. While Sedar has not shown a duty or breach with regard to the condition of the brick walkway, <u>causation</u>, an essential element of both claims, is entirely missing here.

### A. No Evidence of a Dangerous Condition.

While BPLP and RTC had a duty of reasonable care to maintain the property for invitees such as Sedar, they were not an insurer of her safety while on the premises. <u>Fultz v. Delhaize Amer., Inc</u>., 278 Va. 84, 88-89, 677 S.E2d 272, 274 (2009). In this premises liability case, Sedar must "prove the existence of an unsafe or dangerous condition on the premises." <u>Hodge v. Wal-Mart Stores, Inc.</u>, 360 F.3d 446, 451-52 (4th Cir. 2004). There is insufficient evidence of a hazardous condition that existed at the time of the accident, and no evidence that BPLP or RTC had actual or constructive notice of any such condition. The only claimed defective condition is one or more bricks that were loose due to caulking that had worn away. While the brick(s) may have been moved slightly when jostled, they remained even with the surface and were not a trip "hazard." Sedar's evidence in the form of photos and a video do not show a dangerous condition.

Under Virginia law, the failure to correct an irregularity in a sidewalk

surface is not a violation of the duty of ordinary care, especially where the irregularity is an inch or less and not known to be a hazard. Jones v. Wash. Metro. Area Transit Auth., 378 F. Supp. 2d 718, 720-21 (E.D. Va. 2005); *citing* Med. Ctr. Hosp. v. Sharpless, 229 Va. 496, 331 S.E.2d 405 (1985) (finding half-inch depression in concrete expansion joint did not establish unsafe condition); City of Newport News v. Anderson, 216 Va. 791, 223 S.E.2d 869 (1976) (finding depression of concrete expansion joint measuring 3 inches long, 4 inches wide and 1 inch deep did not constitute dangerous condition); Childress v. City of Richmond, 181 Va. 267, 24 S.E.2d 419 (1943) (finding hole in pavement measuring 15 inches long, 8 inches wide and 15/8th inch deep insufficient to establish negligence); City of Roanoke v. Sutherland, 159 Va. 749, 167 S.E. 243 (1933) (finding that concrete sidewalk block elevated 1 l/8th inches above sidewalk surface was not unsafe); City of Richmond v. Schonberger, 111 Va. 168, 68 S.E. 284 (1910) (finding that stone piece protruding two inches above otherwise level street crossing was not dangerous condition giving rise to negligence action).

As stated in City of Newport News, 216 Va. at 793, 223 S.E.2d at 870, "[w]hen the defect is so slight that reasonable men could not differ in concluding that it would not endanger travel in the ordinary modes by persons exercising ordinary care, the municipality is free of negligence as a matter of law…". It is not expected nor required that streets or sidewalks be kept perfectly level and even.

City of Richmond, 111 Va. at 171, 68 S.E. at 285.

Under the facts here, Sedar has not shown an exception from this general rule. The undisputed evidence in this case, including the photos taken immediately after the fall, makes clear that there was no violation of the duty of care related to the sidewalk in question. To the contrary, the evidence shows that BPLP and RTC met their duty of ordinary care. They contracted with MaxSent, which regularly patrolled the property and reported any hazardous conditions (JA 120-121, 173). They took action when any such conditions were reported (JA 165). MaxSent supervisor Blanchette testified that BPLP regularly replaced and repaired bricks at the property since they tended to shift during winter months (JA 973). Sedar's claims fail as she has not shown that a dangerous condition existed at the property in the vicinity of her fall.

**B.      No Evidence of Actual or Constructive Notice to BPLP or RTC.**

Sedar has not established a *prima facie* case of negligence for an additional reason, since she has failed to show that BPLP or RTC had actual or constructive notice of any defective condition.  Sedar must introduce evidence of the responsible person's actual or constructive knowledge of a defective condition on the premises for a legal duty to exist. Grim v. Rahe, Inc. 246 Va. 239, 242, 434 S.E.2d 888, 889 (1993); Roll "R" Way Rinks, Inc. v. Smith, 218 Va. 321, 327, 237 S.E.2d 157, 161 (1977).  Where a plaintiff cannot offer any evidentiary basis other

than surmise, speculation and conjecture as to when the allegedly dangerous condition arose, and cannot establish that the condition existed long enough for a jury to conclude defendants were aware of it, no *prima facie* case of negligence is established. Grim, 246 Va. at 242-43, 434 S.E.2d at 890; *see also* Colonial Stores, Inc. v. Pulley, 203 Va. 535, 537, 125 S.E.2d 188, 190 (1962) (jury verdict set aside where there was no evidence of how, when or by whom an empty bottle was placed on the floor); Hodge, 360 F.3d at 454 ("[e]ven assuming that [plaintiff] established that an unsafe condition existed in the display when she arrived, she failed to provide sufficient evidence of how much earlier the condition arose, and thus cannot establish that the condition was in existence for a time sufficiently long for a jury to conclude that Wal-Mart was negligent in addressing it"); Winn-Dixie Stores, Inc. v. Parker, 240 Va. 180, 396 S.E.2d 649 (1990)(plaintiff slipped on a bean on the floor, but failed to show that the store knew of its presence or how long it had been there).

The case of Jefferson v. Kroger Ltd. P'ship I, E.D. Va. No. 3:14CV156 DJN, 2014 WL 5594921 (E.D. Va. Nov. 3, 2014) is instructive. The plaintiff fell while walking into a store, and claimed that a "little groove" in the sidewalk caused her fall. Id. at *1. She had not looked down or seen the groove prior to her fall. Id. Similar to the facts in this case, the plaintiff in Jefferson alleged that the condition of the sidewalk occurred over time as the original fill material in the crevice settled

or otherwise deteriorated. Id. at *2. Granting summary judgment in favor of the defendant store, the court found that the plaintiff failed to offer an "evidentiary basis from which to conclude when the alleged dangerous condition arose, and therefore, cannot establish that the condition existed long enough for a jury to conclude that Defendants were aware of it." Id. at *6-8. Sedar likewise fails to present any probative evidence whatsoever to show that BPLP or RTC were aware of missing caulk around the bricks. All she has are unsupported conclusions. Her argument that erosion over time left a dangerous condition is insufficient to show notice.

Since Sedar has no knowledge of how long a particular condition existed in the area of her fall (JA 206), a jury could only reach a conclusion about how and when the caulking deteriorated so that the bricks became loose by impermissible "speculation and conjecture." Thomas v. Omni Hotels Mgmt. Corp., 742 Fed. Appx. 729, 732, 2018 WL 3689248 (4th Cir. 2018), citing Great Atl. & Pac. Tea Co. v. Berry, 203 Va. 913, 128 S.E.2d 311, 313 (1962). Mere speculation about when a hazard originated is not sufficient to establish constructive notice. Anderson v. United States, E.D. Va. No. 4:12CV176, 2013 WL 12125741, at *3–4 (E.D. Va. July 29, 2013).

BPLP and RTC took steps to ensure the property was maintained, and that they were notified of any dangerous condition or hazard so they could act

promptly. MaxSent regularly reported issues that might pose safety problems. The evidence in this case is that the BPLP and RTC never received a report of any hazard, dangerous condition or defect prior to Sedar's fall. Immediately after the fall, MaxSent employee Swartz inspected the area and found no hazards. (JA 395). Where the record is devoid of any evidence to support a finding that defendants breached any duty; that any dangerous condition existed on the premises; or that BPLP or RTC were on notice of any dangerous condition, Sedar cannot recover. *See* Town of West Point v. Evans, 224 Va. 625, 628, 299 S.E.2d 349, 351 (1983)

Sedar cites to Allen Realty Corp. v. Holbert, 227 Va. 441, 318 S.E.2d 592 (1984) for the proposition that actual notice to an agent imputes actual notice to their principal, implying that MaxSent purportedly knew of the conditions of irregularities on the brick sidewalk, and its knowledge is imputed to BPLP and RTC. Sedar is relying on the testimony of Swartz, who stated that he almost fell by the stairs on occasions, but was unable to put a timeframe on his experiences (Sedar Brief at 8, 11, 19-20). Swartz must not have deemed the conditions hazardous, as he never reported them to BPLP or RTC. Allen involved the fraudulent actions of an employee of an accounting firm, with the court noting that the employee's knowledge of the fraudulent nature of the transactions imputed this knowledge to his employer. Here, neither MaxSent, BPLP nor RTC had any notice whatsoever that there was a dangerous condition on the walkway. Allen is also

inapplicable since MaxSent is an independent contractor. "Unlike with an employee, knowledge of the independent contractor is not imputed to the employer because the principal-agent relationship is lacking." Cherry v. Palace on Plume St., 90 Va. Cir. 103, 2015 WL 10376064, at *7 (Va. Cir. Ct. 2015). This is the case because employees impute their own knowledge to their employers "not because notice to the agent is proof that the principal actually had notice also, but because it is a fact of such a character, that the principal ought to be as much bound by it, as if he had notice." French v. Successors of Loyal Co., 32 Va. (5 Leigh) 627, 658 (1834). Because MaxSent is an independent contractor, there is no basis on which to impute its knowledge to BPLP or RTC, had it been on notice of any hazard or defect.

### C.    No Evidence of Proximate Cause

The Virginia Supreme Court has stated that "[n]egligence cannot be presumed from the mere happening of an accident.... [t]he evidence produced must prove more than a probability of negligence and any inferences therefrom must be based on facts, not presumptions." Hoffner v. Kreh, 227 Va. 48, 52, 313 S.E.2d 656, 659 (1984) (quoting Weddle v. Draper, 204 Va. 319, 322, 130 S.E.2d 462, 465 (1963). It is the plaintiff's burden to prove negligence, not the defendants' burden to prove lack of negligence. Davoudlarian v. Krombein, 244 Va. 88, 92, 418 S.E.2d 868, 870 (1992). The "but for" rule of proximate causation is followed,

so that defendants are not liable "unless the harm would not have occurred but for the defendant's act." <u>McCauley v. Purdue Pharma L.P.</u>, 331 F. Supp. 2d 449, 461 (W.D. Va. 2004). As the plaintiff, Sedar must prove "why and how the incident happened." <u>Hodge</u>, 360 F.3d at 451, *quoting* <u>Town of West Point v. Evans</u>, 224 Va. at 628, 299 S.E.2d at 351. *"If the cause of the event is left to conjecture, guess, or random judgment, the plaintiff cannot recover."* <u>Id</u>. While proximate cause is most often a question of fact for the jury, the court may resolve the question as a matter of law where "reasonable persons could not differ as to its existence or absence." <u>McCauley</u>, 331 F. Supp. 2d at 461.

Even if a hazardous condition existed on the sidewalk, there was <u>no testimony</u> that supports the conclusion that plaintiff even stepped on a loose brick, or that it caused her fall. Neither of the two witnesses who were with her walking from the garage saw her fall or knew how she fell, and disagreed on Sedar's path of travel to the stairs.

The facts of <u>Marchant</u>, *supra*, are comparable to those here. The plaintiff in <u>Marchant</u> tripped and fell on a sidewalk as a result of hitting something on the sidewalk, although no one actually saw what caused him to fall. <u>Marchant</u>, 344 F. Supp. 2d at 496. Finding that the plaintiff failed to create a genuine issue of material fact as to whether defects in the sidewalk proximately caused his injuries, the court granted summary judgment in favor of the defendant. <u>Id</u>. at 497. Citing

Clark v. United States, 402 F.2d 950, 953 (4th Cir. 1968), the court found under

Virginia law, "if the proof leaves it equally probable that a bad result may have

been due to a cause for which defendant was not responsible as to a cause for

which he was responsible the plaintiff cannot recover." Id. at 498. Marchant had

fainted during his fall and like Sedar, he did not regain consciousness until after

reaching the hospital. Like Sedar, he admitted that he did not know how he fell. At

a later visit to the site of his fall, Marchant saw missing tiles and an exposed

drainpipe and came to the conclusion that one of those defects was the cause of his

fall. Id. In granting summary judgment for lack of causation, the court stated,

> Marchant has offered no testimony beyond suspicion or conjecture
> that the depression created by the missing tiles or the protruding
> drainpipe caused his fall. Marchant merely has demonstrated that
> there were missing tiles and an exposed drainpipe at the restaurant,
> and that he fell from the sidewalk. There is insufficient evidence to
> link the missing tiles or drainpipe to the fall.

Id. at 499. The facts at issue in this case are strikingly similar. Sedar attempts to

support her claims based solely on a later-discovered jiggly brick, which cannot be

tied to her fall without speculation or conjecture.  Her evidence is insufficient, and

her claims fail as a matter of law.

Other cases are in accord that where the cause of an accident is without

factual support, the case should not be submitted to a jury. Kocen v. Piccadilly

Restaurants, LLC, No. 3:10CV921, 2011 WL 3820777 at *3-4 (E.D. Va. Aug. 26,

2011)(plaintiff failed to offer evidence that a mat she alleged caused her to trip

created a hazardous condition); <u>Morrison-Knudsen Co., Inc. v. Wingate</u>, 254 Va. 169, 492 S.E.2d 122 (1997)(holding that an appellate court has the duty to set aside a verdict that could only have been reached through speculation and conjecture); <u>Kendrick v. Vaz</u>, 244 Va. 380, 384-85, 421 S.E.2d 447, 450 (1992)(jury verdict set aside where plaintiff failed to establish existence of unsafe condition in claim that an unsafe hole in the ground caused her to fall and break her ankle); <u>Parham v. Albert</u>, 244 Va. 73, 418 S.E.2d 866 (1992)(evidence failed to show how defective latch caused dogs to escape); <u>Farren v. Gilbert</u>, 224 Va. 407, 297 S.E.2d 668 (1982)(evidence failed to show proximate cause in wrongful death case); <u>Waters v. Holloman</u>, 216 Va. 726, 222 S.E.2d 549 (1976)(jury verdict set aside where absence of evidence of why and how an auto accident occurred).

Sedar cannot base her claims on mere speculation and assumptions. While looking at the landing area with the brick pavers, the witnesses who never even saw Sedar step on any brick, found one brick that moved when jostled and leapt to conclusions. Buchanan "assumed that her fall was because of the brick that was not level." (JA 228). Karen Dibella had no "direct knowledge" of what made Sedar fall, stating "I believe Mr. Rapanut pointed out the brick to us that that is what caused her to fall. But it was him telling us, so I did not observe that." (JA 336-337). Damien Kerr, who photographed the brick landing, confirmed that he had no personal knowledge that Sedar tripped on a brick, or whether the brick shown in

the video he took was involved in the fall or not. (JA 356, 362-263).

The witnesses could not even agree on Sedar's path of travel. Of the three sections of the stairs, Buchanan marked a photo of the stairs in the middle as the section where Sedar descended the stairs, whereas Rapanut testified that Sedar went down the section of stairs to the left side of the middle section. (JA 219-220, 285-286). Looking at the top of the steps from the ground where Sedar was found, Damien Kerr "made an assumption" which flight of stairs Sedar descended, although he admitted he had no personal knowledge of where she was walking (JA 355, 359). Rapanut testified that the brick in the video that Kerr took was not even the same brick that he had located (JA 291).

The cases Sedar relies on for her contention that she has presented sufficient circumstantial evidence to permit her case to be heard by a jury are distinguishable. She cites to Hudson v. Boddie-Noell Enterprises, Inc., W.D. Va. No. 7:11CV00466, 2012 WL 2153375 (W.D. Va. June 13, 2012) for the proposition that she has presented sufficient evidence to support a finding of probable cause. Hudson involved a slip and fall on black ice near the entrance to a restaurant. The plaintiff did not see what he slipped on, but he testified that his feet slipped out from under him. A witness testified that it looked like the plaintiff tripped on the curb, but the plaintiff testified that it wasn't until he tried to open the door that he slipped, and that he navigated the curb without issue. Hudson is

distinguishable for multiple reasons. The plaintiff there recalled his feet slipping out from under him – Sedar remembers nothing of her fall. The plaintiff remembered his that his fall occurred while opening the restaurant's door after successfully navigating the curb, his testimony thereby making the alternative explanation of his tripping on the curb less probable of a cause for his fall than the black ice. Here, there is simply no evidence that Sedar made contact with a loose brick, and the alternative explanations that Sedar either failed to notice the stairs while she held a large poster board, was blinded by bright sunlight as she exited the dark garage, or simply lost her step or tripped due to her rubber-soled shoes or otherwise, are more probable explanations. While the actual cause of the fall remains unknown, Rapanut's recollection that Sedar's head was in his sight and then just disappeared indicates that she most likely missed a step.

The case of McGuire v. Hodges, 273 Va. 199, 639 S.E.2d 284 (2007) is also distinguishable. McGuire involved the drowning death of a toddler who had managed to get past the gate of a neighbor's pool. Nobody saw the child enter the pool, but somebody saw the child trying to open the gate previously. The gate was the only means of ingress to the pool, and the defendant did not argue or present evidence that the child entered the pool by any other means. McGuire is distinct both factually and procedurally.

Procedurally, a different standard of review was in play. The plaintiff obtained a judgment from the Circuit Court, and the case was on appeal in the Virginia Supreme Court. Throughout its opinion, the Court reiterated the standard that "[a] trial court's authority to set aside a jury verdict is limited and should be exercised only if a jury verdict is plainly wrong or without credible evidence to support it." McGuire, 273 Va. at 205, 639 S.E.2d at 287-288. The Court further made clear that it was the jury's function to review the credibility of the witnesses, and the jury disregarded certain witness testimony in reaching their conclusion. Id. 273 Va. at 209, 639 S.E.2d at 290. This Court's review is *de novo*, and does not have a jury verdict to which it has to pay any deference. There is no factual dispute here whether the witnesses saw Sedar fall – they testified they did not.

Factually, in McGuire, there was only one probable explanation for the accident based on the evidence. The court noted that the gate was the only point of ingress to the pool, and that the defendant did not argue or present evidence that the child gained access to the pool by some other means. This left the gate's malfunctioning as the only possible explanation for the child's death. The court distinguished the case from Atrium on this basis. In Atrium, there was a burglary in the plaintiff's apartment with no signs of forced entry and she sued her condominium unit owner's association, as they did not have the extra key for her apartment in their office. Atrium Unit Owners Ass'n v. King, 266 Va. 288, 291,

585 S.E.2d 545, 546 (2003). The court held that the element of proximate cause was missing in Atrium, since the plaintiff's sliding glass door was unlocked and thus this could have been the point of the burglar's entrance, making the plaintiff's theory a mere possibility. Id. The present case is analogous to Atrium and not McGuire. The failure of the gate was the only possible way for the child to enter the pool given the absence of evidence suggesting another means of entry; in contrast to this sole possibility in McGuire, the current case present a myriad of possibilities. As noted above, these other possibilities are equally, if not more probable, explanations for Sedar's fall than the condition of the bricks.

Sedar cites to Wooldridge (a case distinguished by Atrium, *supra*) for the same premise. Wooldridge v. Echelon Serv. Co., 243 Va. 548, 416 S.E.2d 441, 459-60 (1992). Wooldridge involved the violent assault of a female employee inside her office building. A security guard on duty saw "a flash…like someone had ran…from the down elevator to the up elevator." Wooldridge, 243 Va. at 443-43, 416 S.E.2d at 459-60. Security was called to the 11th floor soon after – they went upstairs to find the plaintiff bloodied, and pursued and apprehended her attacker. The attacker was the sole unauthorized person in the building at the time. Wooldridge is distinct as the standard of review was not *de novo* review. Factually, circumstantial evidence existed supporting plaintiff's contention that security's negligence was the cause of her injuries. Before the incident, the security guard

saw a "flash" going in the direction of the up elevators. This observation occurred *prior to* the accident, and thus the specific danger of an unauthorized visitor going to the upper floors was noticed prior to the incident. Here, any alleged brick defects were only pointed out *after* the incident, there being no notice prior. Soon after the guard failed to pursue, there was a call to security regarding an incident on the 11th floor. Upon reaching the 11th floor, the plaintiff was found bloodied. The assailant was the only unauthorized person in the building. These facts together paint a causal chain that requires little inference – a flash was seen going to the up elevator, there was a call from the upper floors, and the only unauthorized person, the assailant, was found on the 11th floor. Unlike <u>Wooldridge</u>, there is nothing in the present record from which to infer a causal connection between BPLP's or RTC's alleged negligence and Sedar's injuries. As opposed to the series of events confirmed by the evidentiary record in that case, leading to a logical conclusion, here Sedar merely fell for unknown reasons, and then looked to possible causes after the fact. This retroactive assessment of the facts as they were when she fell is entirely unlike the observed and uncontested series of events in <u>Wooldridge</u>. In the instant case, it was just as likely that Sedar, carrying a large poster and wallet, failed to watch where she was walking, missed a step or otherwise stumbled and fell. Sedar cannot show why or how she fell, and so her claims must fail.

## D.    Sedar's Expert Cannot Provide Evidence of Proximate Cause

Plaintiff's expert, Dano Holland, attempted to causally tie Sedar's fall to tripping on a brick. His testimony, based on pure speculation, is not probative as evidence. Sedar asserts that Holland "combined information" regarding the evidence. Holland reviewed the video, the photos, his own inspection of the property, Sedar's shoes, etc. in reaching his opinion that the brick was a hazard that likely caused Sedar to fall (Sedar brief at 27). As noted above, the video and photos were taken after the fact and it is unclear whether Sedar even walked in the area of that brick. Holland admitted that there is no evidence that Sedar ever stepped on a brick:

> Q.: Are you able to identify the exact point of contact between Ms. Sedar's foot and any one or more of those bricks that may have caused her to fall?
>
> A.: No. There's no photographs that shows Ms. Sedar's foot on any of those bricks.
>
> Q.: But my question is, in your opinion, are you able to identify the precise trip hazard that caused the fall, if that's your opinion?
>
> A.: No one offers that exact recollection where they've identified Ms. Sedar's foot in contact with a specific thing. All I can identify are the hazards that are present and the conditions based on the observations of those other witnesses and the photographs and what I see and going back to even Ms. Sedar's shoes and the measurements, all of that together.
>
> Q.: And based on our prior discussions, you acknowledge that it was possible that Ms. Sedar stumbled in some other way that didn't involve any of those bricks?

A.: That is possible.

(JA 554-555).

Holland's proposed testimony would not be admissible under Federal Rule of Evidence 702, as expert testimony must be both reliable and relevant. <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 591 (1993) and <u>Kumho Tire Co., Ltd. V. Carmichael</u>, 526 U.S. 137 (1999); <u>see also</u> <u>United States v. Crisp</u>, 324 F.3d 261, 268 (4th Cir. 2003) ("[The] touchstones for admissibility under <u>Daubert</u> are two: reliability and relevancy."). Rule 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Holland's opinion does not involve scientific, technical, or other specialized knowledge, but is based on belief or speculation, and is therefore not admissible. <u>Oglesby v. General Motors Corp.</u>, 190 F.3d 244, 250 (4th Cir. 1999) (emphasis in original). Expert opinions that are based on assumptions which are speculative and are not supported by the record may be excluded. <u>Tyger Constr. Co., Inc. v. Pensacola Constr. Co.</u>, 29 F.3d 137, 142 (4th Cir. 1994). Without any evidence that

Sedar came in contact with a brick on the landing that may have been loose or uneven, the section in Holland's report entitled "Code Review" is irrelevant (JA 432-433). An expert must base his opinion on facts in the records and cannot speculate. *See* <u>Stokes v. L. Geismar, S.A.</u>, 815 F. Supp. 904, 908 (E.D. Va. 1993).

For these reasons, Sedar may not rely on Holland's unreliable opinion as substitute for evidence of the proximate cause of her fall.

### E.      Sedar Ignored Other Equally Possible Reasons for Her Fall.

"Under Virginia law, 'if the proof leaves it equally probable that a bad result may have been due to a cause for which the defendant was not responsible as to a cause for which he was responsible the plaintiff cannot recover.'" <u>Marchant</u>, 344 F. Supp. 2d at 497–99 (citing <u>Clark v. United States</u>, 402 F.2d 950, 953 (4th Cir.1968)). *See also* <u>Southern States Coop., Inc. v. Doggett</u>, 292 S.E.2d 331, 335 (1982) ('Proof of facts from which it can be reasonably inferred that an act or circumstance sought to be established occurred or existed is sufficient to authorize submission of the issue to the jury'); <u>Richardson v. Lovvorn</u>, 199 Va. 688, 692–93, 101 S.E.2d 511, 514 (1958) ("But such circumstantial evidence must be sufficient to establish that the result alleged is a probability rather than a mere possibility"). Since there are other equally possible, and somewhat more probable, reasons that Sedar fell, her claims are barred.

# CONCLUSION

Summary judgment is warranted in this case where there are no genuine issues of material fact. Even viewed in the light most favorable to Sedar, there are no facts, other that rank speculation, tying the cause of Sedar's fall to any loose brick or other defect at the property. There is also no evidence that the conditions presented were dangerous or hazardous, or that BPLP or RTC had notice of such conditions. Sedar presents nothing other than conclusory allegations, mere speculation, and the 'building of one inference upon another' which cannot as a matter of law present a genuine issue of material fact. BPLP and RTC respectfully request that the District Court's Order granting Summary Judgment in their favor be affirmed.

Respectfully submitted,

David D. Hudgins, Esq.
HUDGINS LAW FIRM, P.C.
Suite 100
2331 Mill Road
Alexandria, VA 22314
703-739-3300

Joseph P. Moriarty, Esq.
WILLCOX & SAVAGE, PC
Wells Fargo Center
Suite 2200
440 Monticello Avenue
Norfolk, VA 23510
757-628-5500

*Counsel for Appellees*

**CERTIFICATE OF COMPLIANCE**

The Brief of Appellees complies with Fed. R. App. P. 28.1, containing <u>8,311</u> words exclusive of the corporate disclosure statement, table of contents, table of authorities, statement with respect to oral argument, signature and certificates.

*s/David D. Hudgins*
David D. Hudgins, Esq.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of November, 2019, counsel filed one paper, and one electronic copy of this Brief of Appellees with the Clerk of this Court, and, served an electronic copy of it upon counsel through the CM/ECF system.

*s/David D. Hudgins*
David D. Hudgins, Esq.
