In The
# United States Court of Appeals
For The Fourth Circuit

## CAMILLE SEDAR,

*Plaintiff - Appellant*,

v.

## RESTON TOWN CENTER PROPERTY, LLC;
## BOSTON PROPERTIES LIMITED PARTNERSHIP,

*Defendants – Appellees*,

and

## BOSTON PROPERTIES, INC.; BEACON CAPITAL PARTNERS LLC,

*Defendants*,

v.

## CDA INCORPORATED, d/b/a MaxSent,

*Third Party Defendant.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## AT ALEXANDRIA

_____

## REPLY BRIEF OF APPELLANT

_____

David J. Sensenig
Andrew R. Park
PARK SENSENIG LLC
2310 West Main Street
Richmond, Virginia 23220
(804) 417-6085

*Counsel for Appellant*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................. ii

SUMMARY OF ARGUMENT ..........................................................................1

ARGUMENT .................................................................................................1

    I.     The Dangerous Condition at the Top of the Stairs.................................1

    II.    The Dangerous Condition Violated the Uniform Statewide Building Code.......................................................................................3

    III.   Defendants Had Actual or Constructive Notice of the Dangerous Condition .........................................................................................5

    IV.   The Dangerous Condition at the Top of the Stairs Was the Proximate Cause of Ms. Sedar's Fall Down the Stairs ........................9

        A.    Davida Buchanan .....................................................................9

        B.    Robert Rapanut ......................................................................10

        C.    The Photos and Video .............................................................11

        D.    The Shoes and the Gap ...........................................................11

CONCLUSION .............................................................................................15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................12, 13

*Butler v. Frieden,*
    208 Va. 352 (Va. 1967) ....................................................5

*Griffin v. Spacemaker Group, Inc.*,
    254 Va. 141 (Va. 1997) ....................................................8

*Grim v. Rahe, Inc.,*
    246 Va. 239 (Va. 1993) ....................................................7

*Holland v. Edelblute*,
    179 Va. 685 (Va. 1942) ....................................................3

*Jacobs v. N.C. Admin. Office of the Courts*,
    780 F.3d 562 (4th Cir. 2015) ............................................6

*Jefferson v. Kroger Ltd. P'ship I*,
    E.D. Va. No. 3:14CV156 DJN,
    2014 WL 5594921 (E.D.Va. Nov. 3, 2014). .................3

*Love v. Schmidt*,
    239 Va. 357 (Va. 1990) ...............................................6, 7

*MacCoy v. Colony House Builders, Inc.*,
    239 Va. 64 (Va. 1990) ....................................................4

*McGuire v. Hodges*,
    273 Va. 199 (Va. 2007) ....................................................5

*Miracle Mart, Inc. v. Webb*,
    205 Va. 449 (Va. 1964) ....................................................7

*Reyazuddin v. Montgomery Cty., Md.*,
　　789 F.3d 407 (4th Cir. 2015) .......................................................................12

*Richmond & M.R. Co. v. Moore*,
　　94 Va. 493 (Va. 1897) ...................................................................................7

*U.S. v. George*,
　　568 F.2d 1064 (4th Cir. 1978) .....................................................................14

*U.S. v. Jackson*,
　　863 F.2d 1168 (4th Cir. 1989) .....................................................................14

*Variety Stores, Inc. v. Wal-Mart Stores, Inc.*,
　　888 F.3d 651 (4th Cir. 2018) ...............................................................12, 14

## **OTHER AUTHORITY**

*Virginia Model Jury Instructions* No. 2.100.........................................................14

## SUMMARY OF ARGUMENT

The evidence supporting Plaintiff-Appellant Camille Sedar's ("Ms. Sedar") claims is ample and conspicuous. It includes (i) testimony from two eyewitness walking behind Ms. Sedar when she fell; (ii) photos and video taken soon after the fall; (iii) admissions by Defendants' agents; (iv) physical evidence – the shoes Ms. Sedar was wearing and bloodstains on the steps and sidewalk below; (v) testimony from Ms. Sedar's coworkers who arrived soon after the fall; and (vi) reliable and relevant expert testimony.

On significant points, Defendants ignore evidence, improperly spin evidence in their favor, and even misrepresent the record. Based on the true record, Ms. Sedar should be permitted to proceed to present her case to a jury at trial.

## ARGUMENT

### I.     The Dangerous Condition at the Top of the Stairs.

Contemporaneous photos and video, as well as eyewitness testimony, establish the dangerous condition at the top of the stairs. Defendants do not, and cannot, deny the existence of the condition. Instead, Defendants argue that the condition was not sufficiently bad to be dangerous. To support this assertion, Defendants rely on trip and fall cases on city sidewalks or inside grocery stores. None of the case relied on by Defendants, however, involved a documented defect at the top of stairs, let alone one like that Ms. Sedar had to traverse to exit

Defendants' parking garage. A trip hazard at the top of any stairs significantly raises the likelihood of severe injuries compared to a flat surface.

Contrary to Defendants' characterization, the eyewitnesses ***immediately*** recognized the dangerous condition at the top of the stairs where Ms. Sedar began her fall down the stairs. This is not a case of "after-the-fact musings," as Defendants assert on brief (p. 10). Davida Buchanan ("Buchanan") was following Ms. Sedar and when Ms. Sedar fell, she immediately looked to the ground in front of her where Ms. Sedar had fallen and saw a gap and an area of the bricks that was not level. J.A. at 649-52, 654-56. Buchanan noticed the bricks because that was the area from which Ms. Sedar had just fallen, and she avoided that area while going down the stairs to tend to Ms. Sedar. J.A. at 651-52. As detailed more fully in the Brief of Appellant, Buchanan and Robert Rapanut ("Rapanut"), who also was walking behind Ms. Sedar, testified about their observation of the condition at the time of the incident, including the loose bricks and the gap. J.A. at 649, 652, 666, 725, 730.

Demian Kerr ("Kerr") testified about the bricks that were "out of place" and that he told someone with a walkie-talkie that the condition "seems to be a potential tripping hazard" and said they should put caution tape in the area. J.A. at 850. Ms. Sedar's expert, Dano Holland ("Holland"), opined that the "large open gap adjacent to the loose brick likely creates a trip hazard as the front edge of the brick shifted downward." J.A. at 995-96, 998.

Defendants on brief (p. 18) cite to *Jefferson v. Kroger Ltd. P'ship I*, E.D.Va. No. 3:14CV156 DJN, 2014 WL 5594921 (E.D.Va. Nov. 3, 2014). *Jefferson* only underscores the evidence present here as to the existence of a dangerous condition. In *Jefferson*, the plaintiff did not produce expert testimony on whether the condition was defective or deviated from industry standards. *Id*. at 9. Here, Ms. Sedar offered such evidence through her expert. In *Jefferson*, the plaintiff did not produce any witnesses other than herself to describe the condition. *Id.* Here, numerous witnesses, including eyewitnesses Buchanan and Rapanut, testified to the condition, and photographs and a video show the condition.

Ms. Sedar should be permitted to present this evidence to a jury, especially given the location of the dangerous condition at the top of the stairs. It is well-established in Virginia that a property owner's duty to use "ordinary care" depends on the circumstances. As the Supreme Court of Virginia has held, "ordinary care is a relative term, and that degree of care sufficient under certain circumstances may be negligence or even gross negligence under others." *Holland v. Edelblute*, 179 Va. 685, 688 (Va. 1942). On the evidence here, ruling on this issue as a matter of law, as occurred below, is not proper.

## II.     The Dangerous Condition Violated the Uniform Statewide Building Code.

Evidence from Holland (Ms. Sedar's expert) concerning the defective condition and Defendants' violation of the Uniform Statewide Building Code is

undisputed or unrebutted. This evidence alone is sufficient to overcome Defendants' argument on the issue of the existence of a dangerous condition.

Holland testified that the applicable Building Officials and Code Administrators ("BOCA") code specifically addresses requirements for egress areas from buildings and the treads and landings of a stairway. J.A. at 894-95, 897-98. The area where the fall occurred was "in the exit discharge" of the garage. *Id*. BOCA "even directs how small elevation changes in the means of egress should be addressed." *Id.* Holland testified that the condition of the bricks and stairs violated the building code and, particularly, building code requirements enacted for public safety. J.A. at 505, 894 -99 ("The intent of these code sections is that a safe walking surface be provided in the means of egress to guard against someone tripping, slipping or losing their balance and falling.").

Defendants do not dispute that a "violation of the [Uniform Statewide] Building Code, like the violation of any statute enacted to protect health, safety, and welfare, is negligence *per se*." *MacCoy v. Colony House Builders, Inc.*, 239 Va. 64, 69 (Va. 1990). Defendants do not dispute that the building code sections at issue were enacted for the safety of individuals, such as Ms. Sedar. Defendants do not offer any competing evidence that they did not violate BOCA.

"The doctrine of negligence per se represents the adoption of 'the requirements of a legislative enactment as the standard of conduct of a reasonable

4

[person].'" *McGuire v. Hodges*, 273 Va. 199, 206 (Va. 2007)(quoting *Butler v. Frieden,* 208 Va. 352, 353 (Va. 1967)). "A party relying on negligence per se does not need to establish common law negligence provided the proponent produces evidence supporting a determination that the opposing party violated a statute enacted for public safety."*Id.* Analysis of dangerous condition is not necessary in the context of the negligence per se claim. The cases cited by Defendants related to dangerous conditions on municipal sidewalks, stores, and restaurants are not applicable to the claim of negligence per se. The fact that the condition at issue violated applicable BOCA regulations satisfies what is required.

Holland provided expert testimony, including his opinion that the condition deviated from industry building code standards. In addition to photographs and video, Ms. Sedar's colleagues provided lay testimony concerning their observations of the dangerous condition as it existed at the time. The evidence is sufficient to support a determination that Ms. Sedar encountered a dangerous condition or, stated in technical terms, a building code violation established for her safety and designed to protect her from the exact harm she suffered.

## III. Defendants Had Actual or Constructive Notice of the Dangerous Condition.

This case is remarkable because, prior to Ms. Sedar's fall, Defendants had actual notice of the dangerous condition through Anthony Swartz ("Swartz"), a

security guard employed by the company Defendants hired. Swartz admitted that he himself had almost tripped in the same area prior to Ms. Sedar's fall, as follows:

> Q: Over what did you almost trip?
> A: Either the brick or the step itself.
> Q: And that would include times prior to Ms. Sedar's fall?
> A: Yes.

J.A. at 810-11. Defendants' assertion that Swartz "was unable to put a timeframe on his experiences" is an inaccurate recital of the record. Brief of Appellees p. 20. To the extent there is any inconsistency in the record beyond this affirmative statement by Swartz, it is for the jury to resolve.[1] *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (court cannot weigh evidence or make credibility determinations) (citations omitted).

Defendants' assertion that it could not have actual knowledge because MaxSent, the company it hired and for whom Swartz worked, was an independent contractor is against well-settled Virginia law. Swartz's knowledge is imputed to Defendants "based on agency principals and the doctrine of *respondeat superior*." *Love v. Schmidt*, 239 Va. 357, 361 (Va. 1990). A landowner's duty to maintain the

---

[1] Swartz also testified about the exposed lip at the top of the stairs stating he had almost fallen because of the lip "a thousand times." J.A. at 813-15. While during this portion of his testimony he could not recall the timeframe of the incidents concerning the lip, his description of the condition matches the evidence of the condition at the time of her fall (sagging caulk and exposed lip) and allows for a reasonable inference that his near falls occurred prior to the time of Ms. Sedar's fall and, therefore, that Swartz knew about it prior to her fall. J.A. at 766-69, 772, 814-15.

premises is non-delegable, and it cannot avoid liability by employing a third party. *Id*. ("landowner's common-law duty to provide reasonably safe premises for entertainment of invitees could not be delegated to independent contractor")(quoting *Richmond & M.R. Co. v. Moore*, 94 Va. 493, 506 (Va. 1897)). Defendants contracted with MaxSent, Swartz's employer, to regularly patrol the area and report hazardous conditions, a non-delegable duty. Brief of Appellees p. 17. Therefore, notice to MaxSent is notice to Defendants. *See Love*, 239 Va. at 361 ("[T]his case involves an attempt to delegate the landlord's common-law duty to maintain his premises in a reasonably safe condition. Because such a duty cannot be delegated, we are of opinion that notice to [the independent contractor] of the unsafe condition of the toilet seat was notice to [the property owner], based on agency principles and the doctrine of *respondeat superior*.").

In the alternative, Ms. Sedar provided sufficient evidence to prove Defendants had constructive notice of the condition because it "existed for such a length of time as to make it defendant's duty in the exercise of ordinary care to have discovered it." *Miracle Mart, Inc. v. Webb*, 205 Va. 449, 452-53 (Va. 1964). *See also Grim v. Rahe, Inc.*, 246 Va. 239, 242 (Va. 1993)("constructive knowledge or notice of a defective condition of a premises or fixture may be shown by evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition.").

The photographs and video taken at the time of Ms. Sedar's fall show the sagging and deteriorating caulk joint, and show that the condition had existed for not just days or even weeks, but for months prior to Sedar's fall. J.A. at 766-72, 1047. Yet here there is more by way of expert testimony.[2] According to Ms. Sedar's expert Holland, "the sagging and deteriorating caulk joint immediately adjacent to the loose brick paver would have been visible during routine maintenance inspections and activities." J.A. at 895. "These conditions did not develop overnight but were formed over at least several months." J.A. at 894-95, 998-99. "[T]he sagging of the caulking joint and the adhesion failure" along with "tears that you can see in that caulk joint" support the conclusion that the condition had existed over "at least months." J.A. at 940-41.

Significantly, Holland further opines that "[c]loser inspection of the caulk joint failure should have alerted maintenance personnel to the unlevel and loose brick paver." J.A 894-95, 899. Holland's testimony that the condition existed long enough whereby Defendants should have been aware of it established constructive notice.

---

[2] The cases cited by Defendants on brief (pp. 18-20) are distinguishable because in the cases where the court found for the defendant the plaintiff had not presented expert testimony. Expert testimony alone can be sufficient to establish time to discover and repair a defect. *Griffin v. Spacemaker Group, Inc.*, 254 Va. 141, 146 (Va. 1997).

**IV.  The Dangerous Condition at the Top of the Stairs Was the Proximate Cause of Ms. Sedar's Fall Down the Stairs.**

In her Brief of Appellant (pp. 5-8, 23-29), Ms. Sedar sets forth in detail the evidence that establishes that the dangerous condition at the top of the stairs was the proximate cause of her fall down the stairs. The evidence itself, which is at the heart of this appeal, is of course contained in the Joint Appendix and available for this Court's de novo review. At a minimum, the evidence is sufficient to support a jury finding that the dangerous condition at the top of the stairs caused Ms. Sedar's fall down the stairs.

Because the extensive discussion by Defendants may have obscured the essential evidence, we begin with a summary of key evidence on proximate cause. Taken together as a chain of events and interconnected facts the evidence shows that proximate cause is a jury issue. The key points are as follows:

**A.  Davida Buchanan**

Buchanan, an eyewitness walking behind Ms. Sedar when the fall occurred, looked down to "the area that she [Ms. Sedar] had just fallen from" (J.A. at 652), she saw the dangerous condition there and walked to the side to avoid that area and get to Ms. Sedar (*Id.*) ("I also noticed the level of the bricks before I actually – that's

why I went to the side and didn't follow the same path.").[3] Buchanan went "back up to the stairs . . . to the area where she [Ms. Sedar] had fallen" (J.A. at 687), saw bricks that were "not level at all" (J.A. at 665), observed bricks that "moved" (J.A. at 667), and "saw the gap between the brick and the concrete" (J.A. at 665) that had "space to the point where you could have gotten your feet – your toes – I wear pointy shoes, so my foot would have gotten stuck there" (J.A. at 666). Buchanan only looked at the area where Ms. Sedar had fallen. J.A. at 663 ("After the fall? No, I went to the top of the stairs where she had actually fallen. I didn't look at the other area; only the area that we exited.") Based on what she observed, Buchanan believed that the loose bricks and the gap at the top of the stairs caused Ms. Sedar to fall. J.A. at 695-96.

## B.    Robert Rapanut

Rapanut, also an eyewitness walking behind Ms. Sedar when the fall occurred, placed Ms. Sedar above the hazardous condition when she fell (J.A. at 728) ("I know

---

[3] Defendants represent to this Court that Buchanan and Rapanut offered "conflicting evidence" and "could not even agree on Sedar's path of travel." Brief of Appellees pp. 6, 25. This blatantly misrepresents the record. During deposition, Defendants showed Buchanan photos of the stairs taken from a vantage point unfamiliar to her and without any markers that existed at the time (*e.g.*, bloodstains, defects in the bricks). Buchanan initially pointed to the middle section of the stairs in the photo, but corrected her testimony after she was shown photos taken shortly after the incident. J.A. 692-94. With this correction, she and Rapanut pointed to the same section of the stairs. Buchanan then explained why she had been confused. J.A. at 697-698. Defendants omit any reference to this but are well aware of it.

where her body was, and generally when you – if you draw a straight line from her head, it would be right where the landing would be."). And Rapanut only looked at bricks and areas that were on Ms. Sedar's path of travel. J.A. at 745.

### C. The Photos and Video

Consistent with Buchanan's request to take photos (J.A. at 654), shortly after the incident a coworker took close up photos of the area where Ms. Sedar had actually fallen, as well as photos that showed the larger scene. J.A. at 766-72. Shortly after the incident, the coworker made a video of the scene, which includes audio describing what occurred. J.A. at 1047. The photos and video show the bloodstains and how they line up with the dangerous condition at the top of the stairs and show the dangerous condition from where Ms. Sedar began her fall down the stairs. The video documents what had just occurred.

### D. The Shoes and the Gap

Ms. Sedar was wearing rubber soled flats shown in photos in the record J.A. at 1000-01. According to Ms. Sedar, "When I retrieved the shoes to go home, I immediately noticed a rather large and noticeable scuff at the top/tip of the right shoe that had not been present before the fall." J.A. at 892. On this basis and Buchanan's testimony about the gap, it would be reasonable to infer that the toe of Ms. Sedar's right shoe got stuck in the gap between the brick and the concrete of the stair causing

her fall.[4] Even Swartz, the security guard contracted by Defendants, testified, "there's a lip on this fricking stair that I've almost fallen on myself a thousand times." J.A. at 814.

The evidence summarized above satisfies on summary judgment the "pertinent inquiry" for proximate cause.[5] *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). That is, at a minimum Ms. Sedar has offered sufficient evidence to show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. (citing *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 413 (4th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). The facts of the cases relied upon by Defendants on brief (pp. 22-24) do not involve anything like two eyewitnesses who followed behind the plaintiff, who identified where the plaintiff began her fall, and who described the hazardous conditions at that spot. They do not involve anything like photos and a video taken shortly after the fall while security guards and paramedics were still there. Nor do they involve

---

[4] Defendants could pursue with a jury their argument that "[h]er shoes could have had scuff marks on them already or gotten scuffed during her fall." Brief of Appellees pp. 7-8. Juries routinely resolve such factual issues.

[5] Testimony from Holland, Ms. Sedar's expert, also establishes proximate cause. His opinions are based on the key points summarized here, among other evidence, and are reliable and relevant.

anything like damage to plaintiff's shoe consistent with getting the toe stuck in a gap.

Just as they did below and as they have done here on appeal, at trial Defendants could argue the weight of the evidence on proximate cause. They could argue that certain facts do not support legitimate inferences or deductions of proximate cause. They could argue credibility. If Defendants can adduce evidence to support the alternative cause theories they suggest on brief (p. 26), such as "failed to notice the stairs," "blinded by bright sunlight," or "tripped due to her rubber-soled shoes," they could argue those to the jury.[6] Those are all arguments for a jury to consider and resolve, not a judge. *Id*. ("The Supreme Court has made it clear that '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are *jury* functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.'") (quoting *Anderson,* 477 U.S. at 255) (emphasis added by Fourth Circuit).

Categorizing evidence as circumstantial or direct is ultimately of no significance. There is no special legal requirement of ***direct*** evidence of proximate cause. As the Fourth Circuit has long recognized, "circumstantial evidence is treated

---

[6] Contrary to the considerable evidence in the record referenced by Ms. Sedar, Defendants do not cite to any evidence in the record to support these theories highlighting that their claims regarding causation are nothing more than speculation and conjecture.

no differently than direct evidence." *U.S. v. Jackson*, 863 F.2d 1168, 1173 (4th Cir. 1989) (citing *U.S. v. George*, 568 F.2d 1064, 1069 (4th Cir. 1978)). On this score, the Virginia model instruction states as follows:

> Any fact that may be proved by direct evidence may be proved by circumstantial evidence; that is, you may draw all reasonable and legitimate inferences and deductions from the evidence.

*Virginia Model Jury Instructions* No. 2.100 ("Circumstantial Evidence").

Despite the equal treatment afforded circumstantial evidence, Defendants' proximate cause argument distills to insistence that there must be *direct* evidence that the dangerous condition at the top of the stairs caused her to fall. In effect, Defendants argue Ms. Sedar can proceed to trial only if her fall was caught on video or if someone testified she saw Ms. Sedar's foot on the bricks and gap when she fell and can specifically describe what happened.[7] This extreme position is contrary to well-established law and, if accepted, would create an often insurmountable hurdle.

Below and here on appeal the parties have devoted much time and effort to address and argue the evidence of proximate cause. This proves the point – there is

---

[7] Defendants contend that the cause of Ms. Sedar's fall is "completely unknown." Brief of Appellees p. 4. This is a red herring designed to try to introduce an irrelevant construct to distract from the "pertinent inquiry" discussed above. Summary judgment depends on sufficiency of evidence of a genuine issue of material fact. *Variety Stores*, 888. F.3d at 659. It does not turn on concepts of what is absolutely known or unknown.

ample evidence to establish proximate cause. What caused Ms. Sedar's fall from the top of the stairs is a jury question.

## <u>CONCLUSION</u>

This case presents triable issues. Ms. Sedar respectfully requests the Court to reverse the grant of summary judgment and remand for further proceedings.

Respectfully submitted,

/s/ David J. Sensenig
David J. Sensenig
Andrew R. Park
PARK SENSENIG
2310 West Main St.
Richmond, VA 23220
(804) 417-6085
(888) 552-1781 (facsimile)
david.sensenig@parksensenig.com
andrew.park@parksensenig.com

*Counsel for Appellant*

# <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [*3,614*] words.

[   ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.    This brief document complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[   ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: December 12, 2019       /s/ David J. Sensenig
                                      *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 12th day of December 2019, I caused this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Joseph P. Moriarty, Esq.
Willcox & Savage, P.C.
Wells Fargo Center
440 Monticello Avenue, Ste. 2200
(757) 628-5500

David D. Hudgins, Esq.
Hudgins Law Firm, P.C.
Eisenhower Center III
2331 Mill Road, Ste. 100
Alexandria, VA 22314
(703) 739-3300

*Counsel for Appellees*

I further certify that on this 12th day of December 2019, I caused the required copies of the Reply Brief of Appellant to be hand filed with the Clerk of the Court.

/s/ David J. Sensenig
*Counsel for Appellant*